UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN F. CHIMIS,<br><br>    Plaintiff,<br><br>  v.<br><br>THE PEOPLES GAS LIGHT AND COKE CO.<br>and WEC ENERGY GROUP, INC.,<br><br>    Defendants. | No. 16 CV 9275<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

While working as crew leader for defendant Peoples Gas, plaintiff Steven Chimis developed knee problems and began to have difficulty performing certain tasks. Chimis asked his supervisors to be assigned to a crew with an extra worker to alleviate some of his difficulties, but his requests went unanswered. After Chimis failed a random breathalyzer test at work, Peoples Gas terminated his employment. Chimis brought this action arguing that his dismissal was unwarranted and that Peoples Gas unlawfully terminated him because of his age and disability, and in retaliation for asserting his statutory antidiscrimination rights. Defendants move for summary judgment. For the following reasons, defendants' motion is granted.

**I.    Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See King v. Ford Motor Co.*, 872 F.3d 833, 837 (7th Cir. 2017).

## II.  Background

Chimis began working for Peoples Gas in 1990, and became a crew leader in 2000. [40] ¶¶ 5–6.[1] Crew leaders direct and perform all types of work required for the construction, maintenance, and installation of natural gas systems. *Id.* ¶ 7. The crew leader job profile requires employees to "constantly" stoop and bend; to "frequently" walk, kneel, and crawl; and to push, pull, lift, and carry items weighing up to 100 pounds. *Id.* ¶ 8. Because a crew leader is "qualified to do everything . . . a lot of times they won't do the physical labor. They will . . . have their guys do it, and

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number. The facts are largely taken from plaintiff's response to defendants' Local Rule 56.1 statement of facts, [40], and defendants' response to plaintiff's LR 56.1 statement of additional facts, [51], where the asserted fact and accompanying response are set forth in the same document. Peoples Gas's motion to strike, [49], is denied because it is unnecessary. Any additional facts included in responses and statements that are unsupported by admissible evidence are disregarded. Only those facts which are properly controverted are considered disputed.

they will guide them while they do it." [51] ¶ 64.[2] Some crew leaders also perform the more physical aspects of the job. *Id*. ¶ 65.

In 2014, Peoples Gas began investigating whether its employees were accepting "under the counter cash flow" from customers. [40] ¶ 11. As part of the investigation, Peoples Gas twice interviewed Chimis. *Id*. An HR manager and a union representative were present at both interviews. *Id*. ¶¶ 13, 15. At the second, an additional HR person and union member were also present—the union members were there to represent Chimis's employment interests. *Id*. ¶ 15. Chimis initially denied any wrongdoing, and a few minutes into the second meeting, the union members took him to another room to explain to him the seriousness of the situation. *Id*. ¶ 16; [51] ¶ 60.[3] One union representative said, "Steve you got to come clean." [28] at 39:18–40:2; [51] ¶ 49.[4] Chimis replied, "Come clean about what? I have not done anything wrong." *Id*. Chimis also told the union members he was scared of being let go or suspended. [40] ¶ 17. After returning to the interview, the

---

[2] That Brian Murray, who made this statement, also testified that some crew leaders do physical labor does not controvert that "a lot of times" crew leaders do not engage in the physical labor.

[3] Peoples Gas asserts that the material in [51] ¶ 60 does not support Chimis's assertion. I disagree. Though Chimis testified that he eventually implicated himself at the meeting, he also testified that he initially denied any wrongdoing. And though Chimis does not specify during which meeting he initially denied any involvement, I view the facts in the light most favorable to him and credit his account that he initially denied any misconduct. The additional information asserted in Chimis's response in [40] ¶ 16 violates LR 56.1 and so I disregard it.

[4] Peoples Gas argues that Brian Murray does not recall saying this to Chimis and that this statement is inadmissible hearsay. The statement is admissible nonhearsay. It is not offered for the truth—that Chimis truly did need to come clean—but for its intimidating effect on the listener. And though Murray testified that he did not recall telling Chimis to come clean, at this stage facts are viewed in the light most favorable to Chimis, and so I consider his account of the conversation.

3

HR manager asked Chimis what he knew about the under-the-table payments, and Chimis responded that he "might have known something," though that response was a lie. [40] ¶ 18; [51] ¶ 50.[5] Chimis falsely implicated himself at the interview because he was worried about keeping his job, and he thought admitting knowledge and receiving a ten-day suspension was better than risking termination. [40] ¶ 18. Peoples Gas placed Chimis on a ten-day suspension in June 2014. *Id.* ¶ 19. As part of his suspension Chimis signed a last chance agreement, which required him to comply with the Peoples Gas code of conduct, policies, work rules, and department general and operational rules. *Id.* ¶¶ 21–23. One Peoples Gas employee described a last chance agreement as "your last choice of either signing your Last Chance Agreement or not having a job." [51] ¶ 61. As a result of the investigation, Peoples Gas issued "numerous Last Chance Agreements," and some employees received suspensions. [28-1] at 71:22–72:2; [40] ¶ 44.

While working at Peoples Gas, Chimis began to experience difficulty with mobility and at some point told his supervisors (he had three different supervisors throughout his employment) that both of his knees "were bad." [40] ¶¶ 10, 32; [51] ¶¶ 47, 62.[6] He also mentioned, likely sometime in 2015, that "it would be nice" to

---

[5] Peoples Gas objects to Chimis's assertion about what he told the interviewer, but the cited testimony supports Chimis's asserted fact. Peoples Gas rephrases Chimis's description of the events, but its characterization is not meaningfully different, and so its response does not adequately controvert the asserted fact. [51] ¶ 50. Chimis's assertion that "he never produced or confessed to any specific actions or knowledge of any actions related to the violations," however, is not supported by the cited testimony and so is disregarded. *Id.* ¶ 52.

[6] Peoples Gas disputes that Chimis experienced difficulty with his mobility, citing Brian Murray's testimony that he never noticed Chimis's stride being impaired. *See* [51] ¶ 62. Viewing the facts in Chimis's favor, however, he experienced knee problems. I do not credit Chimis's statement that other employees noticed he was not walking normally, however,

4

work in a crew of three instead of two because it was "very hard for [him] to get in and out of the hole." [40] ¶ 33; [28] at 62:6–9. His supervisor replied, "I'll see what I can do." [51] ¶ 58.[7] According to Chimis, some younger employees were allowed to work in three-person crews. *Id.* ¶ 68.[8] In May 2015, Chimis went to the doctor regarding his knees. *See* [40] ¶¶ 35–36. The doctor ran some tests and told Chimis to return in twelve weeks to see if his condition had improved. *Id.* ¶ 36; [27-10] at 2–3. Chimis did not follow up until May 2016. [40] ¶ 36; [51] ¶ 59.

Chimis also struggled with an alcohol problem. The Peoples Gas drug and alcohol policy provided that employees "who test positive for alcohol at a level of .04 or greater . . . or otherwise violate a [Department of Transportation] regulation will be temporarily removed from duty." [40] ¶ 24. Typically, Peoples Gas would require that an employee who violated the policy for the first time complete substance abuse counseling. [51] ¶ 53; [28-2] at 32:8–23.[9] Peoples Gas generally did not consider self-identifying as having an alcohol problem as a violation. [40] ¶ 25; [51] ¶ 55. But it did require employees who self-identified to complete the

---

because it is based on inadmissible hearsay. *See id.* ¶ 63. I also note that the citation in ¶ 63 does not correspond to the correct testimony. The referenced statement can be found in [28] at 61:8–12.

[7] Peoples Gas argues that this statement is inadmissible hearsay. But the statement was made by a supervisory Peoples Gas employee within the scope of his agency relationship with Peoples Gas and so is not hearsay. *See* Fed. R. of Evid. 801(d)(2)(D).

[8] Peoples Gas objects to this assertion, noting that Chimis was unable to provide the names of any such employees. I agree Chimis has failed to demonstrate that he has sufficient personal knowledge to make this assertion, and so I do not consider this fact in reaching a decision. I include it, however, to show Chimis's belief at the time he made his request for an additional crew member.

[9] Peoples Gas's response improperly adds nonresponsive facts and fails to controvert Chimis's assertion that the typical response to first-time violation was to require substance abuse counseling.

5

recommendations of an Employee Assistance Program and provide a negative alcohol test before returning to safety-sensitive functions. [40] ¶ 25. Moreover, "any employee determined to be . . . under the influence of alcohol during the span of any working period . . . or while on company property . . . [was] subject to severe disciplinary action up to and including termination of employment." *Id*. ¶ 26. The policy defined under the influence of alcohol to mean having a blood alcohol concentration of .04 or greater. *Id*.

In 2013, Chimis voluntarily sought rehabilitation, entered the Employee Assistance Program, and went on medical leave. *Id*. ¶ 39. Chimis successfully completed the program in January 2015 and returned to work. *Id*. ¶ 40. As part of the program, Chimis was subject to random alcohol tests for five years. *Id*. When Peoples Gas administered a breathalyzer test on November 24, 2015, Chimis had a blood alcohol content of .077. *Id*. ¶ 27. He had consumed alcohol approximately twelve hours before his shift that day. *Id*. Peoples Gas sent Chimis home and began an investigation. *Id*. A week later, Peoples Gas terminated his employment. *Id*. ¶ 28. Peoples Gas's stated reasons for the termination were that Chimis had violated the alcohol policy, his last chance agreement, and DOT standards by exceeding the .04 allowable blood alcohol limit. *Id*. ¶¶ 29–30.

## III. Analysis

Chimis brings claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, alleging unlawful discrimination and retaliation.

### A. Disability Discrimination

To prevail on a claim for disability discrimination under the Americans with Disabilities Act, a plaintiff must show that the defendant took an adverse employment action against the plaintiff because of his disability. *See Ortiz v. Werner Ents., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). The *McDonnell-Douglas* framework is one way that a plaintiff can establish discrimination. *See David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508,* 846 F.3d 216, 224 (7th Cir. 2017). To establish a prima facie claim for disability discrimination a plaintiff must show: (1) he is disabled within the meaning of the Act; (2) he is qualified to perform the essential functions of the job, either with or without a reasonable accommodation; and (3) he suffered from an adverse employment action. *Nese v. Julian Nordic Constr. Co.*, 405 F.3d 638, 641 (7th Cir. 2005). If the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the employer to provide a legitimate justification for the adverse act. *Id.* If the employer succeeds, the burden then shifts back to the plaintiff to show that the provided justification was pretextual. *Id.*

The definition of disability under the Act encompasses three different categories of impairment. An individual is disabled if he has a "physical or mental

7

impairment that substantially limits one or more . . . major life activities," has a "record of such an impairment," or is "regarded as having such an impairment." 29 C.F.R. § 1630.2(g)(1). "Major life activities include, but are not limited to . . . [c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working." 29 C.F.R. § 1630.2(i)(1). "The term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. [It] is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability." 29 C.F.R. § 1630.2(j)(1)(ii).

Peoples Gas does not dispute that Chimis suffered an adverse action when it terminated his employment. And viewing the facts in the light most favorable to Chimis, there is at least a genuine dispute as to whether he was qualified to perform the essential functions of the job. Though Chimis asserts that he had trouble climbing in and out of the hole, he continued to perform his duties up until his termination. And though Chimis was in pain, nothing in the record indicates that his knee problems prevented him from doing his job.

Chimis, however, has not shown that he was disabled within the meaning of the Act.[10] Chimis visited the doctor during his employment because of his knee pain, and the tests revealed severe medial joint space loss, osteophytes and sclerosis, and severe osteoarthritis. *See* [27-10] at 2. But Chimis does not allege facts about, or otherwise elaborate on, how these problems impacted his daily life. And though it may have been painful, the record indicates that Chimis was able to perform his job, which required stooping, bending, and kneeling. Without any evidence that his knee pain rose to the level of substantially limiting some major life activity, no reasonable jury could conclude that Chimis had a disability as defined by the Act.

Nor has Chimis shown that he has a record of impairment or that Peoples Gas regarded him as having an impairment. "An individual has a record of a disability if the individual has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1). This includes people who have recovered from a disabling condition but may remain subject to stereotyping from their employers. *See Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 509 (7th Cir. 1998). Chimis did

---

[10] Chimis asks the court to take judicial notice of the fact that in April 2017, the Social Security Administration determined that Chimis became disabled on November 24, 2015. *See* [41-1] at 1. To be judicially noticed, a fact must be indisputable. *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1354 (7th Cir. 1995). The court takes judicial notice of the Social Security Administration's determination—it is not disputable that SSA made the determination—but that does not make Chimis's disability an indisputable fact for purposes of this litigation. The Social Security Act and the Americans with Disabilities Act define disability differently, so a finding of disability under one does not automatically guarantee the same conclusion under the other. *Compare* 42 U.S.C. § 416(i), *with* 29 C.F.R. § 1630.2(g)(1).

not provide any additional information to show that he had a history of impairment apart from the medical record already discussed. Moreover, there is no indication that he was ever misclassified as having an impairment. And though Chimis informed his supervisors about his knee pain, he has not shown that Peoples Gas regarded him as being disabled. On the contrary, the record shows that Peoples Gas declined to provide Chimis with his requested accommodation and expected him to continue to perform his duties as a crew leader. Because Chimis's condition does not fit within any of the three categories of qualified disabilities under the ADA, he cannot prevail on his disability-discrimination claim.

Even assuming Chimis established a prima facie case of discrimination, he has not met his burden of demonstrating that Peoples Gas's nondiscriminatory justification is pretextual. Peoples Gas asserts that it terminated Chimis's employment because he failed a random alcohol breathalyzer test, in violation of company policy and Chimis's last chance agreement. Chimis does not dispute that his blood-alcohol content exceeded the allowable limit, nor does he dispute that he was on a last chance agreement. Instead he argues that he should not have been on a last chance agreement in the first place because Peoples Gas more rigorously questioned him than a nondisabled employee during the company-wide investigation. This intense questioning, according to Chimis, intimidated him into wrongly admitting that he knew something about the misconduct, leading to his placement on a last chance agreement. And had he not been on a last chance agreement, Chimis argues, he would not have been terminated. But Chimis

provides no evidence, aside from his assertion that the other questioned employee was not disabled, linking the aggressive investigation into under-the-table bribes to his alleged disability. No reasonable juror could conclude, based on this attenuated chain of events, that Peoples Gas's stated justification was pretextual.

And viewing the evidence as a whole, outside of the *McDonnell-Douglas* framework, leads to the same result. Chimis has not shown that his termination was linked to his disability—it was based on a genuine belief that Chimis violated the alcohol policy—and as a result, summary judgment is appropriate.

B.     **Failure to Accommodate**

The ADA requires employers to make reasonable accommodations that will allow a qualified individual with a disability to perform the essential functions of his or her job, unless the employer can demonstrate that the accommodation would impose an undue hardship. 42 U.S.C. § 12112(b)(5)(A). To prevail on a failure-to-accommodate claim, a plaintiff must demonstrate that he is a qualified individual with a disability, that his employer was aware of his disability, and that his employer failed to reasonably accommodate his disability. *Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 975 (7th Cir. 2009). "Identifying reasonable accommodations for a disabled employee requires both employer and employee to engage in a flexible, interactive process." *Brown v. Milwaukee Bd. of Sch. Dirs.*, 855 F.3d 818, 821 (7th Cir. 2017). "[B]oth parties bear responsibility for determining what accommodation is necessary." *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996).

Chimis informed his supervisors about his knee problems and requested to work in a three-person crew. His supervisor responded that he would see what he could do, but never followed up or addressed Chimis's concerns. Based on these facts, a reasonable juror could conclude that Peoples Gas was aware of Chimis's alleged disability and that it failed to engage in an interactive process to identify a reasonable accommodation. However, as discussed above, Chimis has not shown that his knee pain qualified as a disability. So although Peoples Gas may have failed to accommodate Chimis's knee problem, he is not a qualified individual under the Act and cannot prevail on his failure-to-accommodate claim.

### C. Disability Retaliation

The ADA prohibits employers from retaliating against employees who assert their right to be free from discrimination. 42 U.S.C. § 12203(a). The elements of a claim for unlawful retaliation are: (1) the employee engaged in a statutorily protected activity; (2) the defendant subjected him to an adverse employment action; and (3) a causal connection existed between the two events. *Guzman v. Brown Cty.*, 884 F.3d 633, 642 (7th Cir. 2018).

Chimis engaged in a statutorily protected activity when he asked his supervisors for an accommodation. *See id.* at 643. And again, his termination was an adverse employment action. But Chimis has not alleged facts that would allow a reasonable factfinder to conclude that Peoples Gas terminated him in retaliation for his accommodation request. A plaintiff can establish causation by showing that the protected activity was a "substantial or motivating factor" in the decision to

terminate him. *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005). Chimis has not shown that his request to work in a three-person crew had any impact Peoples Gas's decision to terminate him, let alone that it was a substantial or motivating factor. Chimis requested his accommodation sometime in 2015—though he cannot recall the precise timing—and was terminated in December 2015. A reasonable factfinder could not, based on this uncertain timing alone, conclude that Peoples Gas terminated Chimis because of his accommodation request.

Further, as discussed above, is undisputed that Chimis violated the drug and alcohol policy and his last chance agreement when he failed the random breathalyzer test. Chimis again argues that his placement on a last chance agreement was unfair and "created a domino-effect, preventing [him] from being treated as similarly situated employees." [41] at 19. But like his argument regarding his discrimination claim, this does not show that Peoples Gas's offered justification is pretextual or that it terminated him in retaliation for his accommodation request. And though the timing of events is somewhat uncertain, it is clear that Chimis was put on a last chance agreement in 2014, before he requested an accommodation for his disability. This undercuts Chimis's assertion that his termination, which was justified in part by the fact he was on a last chance agreement, was retaliatory. Without anything to link his termination to his protected activity, Chimis cannot prevail on his disability-retaliation claim.

### D. Age Discrimination

Chimis also brings a claim for age discrimination. To prevail, Chimis must prove that Peoples Gas terminated him because of his age. *See David,* 846 F.3d at 224. As with disability discrimination, one way to do so is to use the *McDonnell-Douglas* burden-shifting framework. To state a prima facie claim Chimis must show: (1) he was a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; (4) and his employer treated similarly situated employees outside the protected class more favorably. *Id*. at 225.

Chimis has not shown that he was meeting Peoples Gas's legitimate expectations. There is no dispute that Chimis admitted (truthfully or not) to knowing something about the misconduct during the company-wide investigation, or that he failed a breathalyzer test. Even taking Chimis's purported justifications (that he was intimidated into confessing and that he had only consumed alcohol the night before his shift) there is no evidence that Peoples Gas was not acting in good faith when it determined that he had violated its rules in both of these instances. Given these instances of misconduct, no reasonable jury could conclude that Chimis was meeting Peoples Gas's legitimate expectations (even though Chimis had no performance failures other than his suspension and alcohol use, those are enough).

Chimis also has not shown that he was treated worse than similarly situated, younger employees. To demonstrate that younger employees were treated more favorably, Chimis relies on a spreadsheet that lists twelve Peoples Gas employees

who were disciplined for alcohol or drug policy violations. The spreadsheet includes limited information about each individual including: job title, the date of the violation, the employee's age when the violation occurred, and the disciplinary action taken. [41-2]. Three of the listed employees received disciplinary layoffs and nine were terminated. *Id*. Of the nine terminated employees, seven were 40 or older. *Id*. One of the three employees who received a disciplinary layoff was over 40. *Id*. There is not enough information about these employees to show that they are similarly situated. Aside from Chimis, none of the listed individuals were crew leaders. And there is no indication as to whether any of them was on a last chance agreement at the time of their violation. Without more, this evidence does not support Chimis's claim that he was terminated because of his age.

### E. Age Retaliation

Finally, to prevail on his claim for age retaliation, Chimis must prove that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two. *Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007). A plaintiff can demonstrate the causal connection by showing that he was meeting the employer's legitimate expectations and was treated less favorably than similarly situated employees who did not engage in protected expression. *Id*. As already discussed, Chimis has not shown that he was meeting Peoples Gas's legitimate expectations. And though he suffered an adverse employment action, Chimis did not engage in statutorily protected expression.

15

Launching a complaint about discrimination with an employer may constitute a statutorily protected activity, but the complaint must indicate that the discrimination occurred because of the employee's protected characteristic. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). "Merely complaining in general terms of discrimination . . . without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Id*. Chimis provides no evidence that he ever complained about age discrimination, nor does he assert that he engaged in any other protected activity. And Chimis has not provided any information to support an inference that he was treated less favorably than any similarly situated employees.

In summary, because no reasonable jury could conclude that Chimis was disabled as defined by the ADA, that Peoples Gas discriminated against him based on his age, or retaliated against him for any protected activity, defendants' motion for summary judgment is granted.

## IV. Conclusion

Defendants' motion for summary judgment [29] is granted. Defendants' motion to strike [49] is denied. Enter judgment and terminate civil case.

ENTER:

                                            Manish S. Shah
                                            United States District Judge

Date: July 30, 2018